STEWART, *Assignee of* ST. CLAIR COUNTY BANK, v. OUTHWAITE; EDWARDS, *Interpleader, Appellant.*

Division One, November 23, 1897.

1. **Practice:** ATTACHMENT: BURDEN OF PROOF: SHIFTING OF POSITIONS ON APPEAL. Parties are bound on appeal by positions they take at the trial, unless the demands of public policy interfere with the application of the rule. So that if the interpleader in an attachment suit voluntarily assumes the burden of proving that the attached property belongs to him, he will be bound by that position on appeal.

2. **Attachment:** INSTRUCTION: USE OF WORD "SATISFIED." The use of the word *satisfied* in an instruction in the sense of *believe*, is not error if it appears not to be misleading.

3. **Attachment:** JOINT FRAUD BETWEEN ATTACHED DEBTOR AND INTERPLEADER. An instruction which calls for a finding that the interpleader participated in the purpose or intent of the attached debtor to hinder or defraud his creditors, is not error if from the testimony the jury may infer that there is such participation.

4. ——: SALE: GOOD FAITH.  An instruction which tells the jury that the interpleader should recover if a chattel mortgage and a bill of sale were given in consideration of a valid subsisting debt, is erroneous, because it leaves out of view the good faith of the transaction.

5. ——: INTENT OF A MORTGAGE.  The attachment creditor is not concluded by the testimony of the attachment debtor that the transfer of his property was not intended to defraud or delay his creditors, even though such testimony is elicited by the attachment creditor.

6. ——: TAXING COSTS AGAINST INTERPLEADER.  The interpleader claimed the property attached under two chattel mortgages, one of which for a part of the property was to himself directly, and the other for other property was to a third party.  The property covered by this mortgage, which interpleader had bought after the attachment writ on all the property was levied, was given to him by the jury. *Held*, that the court did not err in taxing all the costs of the case against the interpleader.

*Appeal from Henry Circuit Court.*—Hon. James H. Lay, Judge.

Affirmed.

*Graves & Clark* for appellant.

(1)  The evidence is undisputed that the interpleader had a written bill of sale for the goods, and was in the actual possession thereof when the attachment was levied.  These gave the interpleader *prima facie* title at the time of the seizure, and the burden of proof was thereby cast upon Stewart, the assignee, to show that the interpleader's *prima facie* title was wrongful and fraudulent.  *Singer v. Goldenburg*, 17 Mo. App. 549; *Albert v. Besel*, 88 Mo. 150; *Shoe Co. v. Casebeer*, 53 Mo. App. 640; *Taylor v. Crockett*, 27 S. W. Rep. 620. (2)  The mortgage and bill of sale were regular upon their face, and under such circumstances fraud must be affirmatively proved, and the burden of proof is upon the person attacking the conveyance.  *Gutzweiler's Adm'r v. Lackmann*, 39 Mo. 91.  (3)  This said instruction number 5 is erroneous for the further reason that

it says to the jury "you must be satisfied . . . . . . . he (meaning interpleader) was the owner of the property in controversy." This is the same as requiring the interpleader to prove his case to the "satisfaction" of the jury. Such words in an instruction imposes a greater burden upon a party than the law imposes. *Railroad v. Kemp*, 30 S. W. Rep. (Tex.) 1117; *Railroad v. Bartlett*, 81 Tex. 44; *Bain v. Ullman*, 71 Tex. 537; *Emerson v. Mills*, 83 Tex. 388; *Gage v. Railroad*, 14 S. W. Rep. (Tenn.) 73; *Shinn v. Tucker*, 37 Ark. 389; *Finks v. Cox*, 30 S. W. Rep. 512. The word "satisfy" or "satisfied" should not be used in instructions in civil cases. Preponderance of the evidence is all the law requires. *Railroad v. Canman*, 13 S. W. Rep. (Ark.) 280. (4) All of the instructions as to fraud are erroneous. The pleadings raised no issue of fraud. Instructions must be confined to the case made by the evidence within the issues defined by the pleadings. 2 Thompson on Trials, sec. 2309; *Duke v. Railroad*, 99 Mo. 347; *Waddingham v. Hulett*, 92 Mo. 528; *Lester v. Railroad*, 60 Mo. 265; *Brown v. Railroad*, 101 Mo. 484; *Bank v. Armstrong*, 62 Mo. 59; *Glass v. Gelvin*, 80 Mo. 297; *Moffatt v. Conklin*, 35 Mo. 453; *Bank v. Murdock*, 62 Mo. 70; *Wade v. Hardy*, 75 Mo. 394; *Currier v. Lowe*, 32 Mo. 203; *Greer v. Parker*, 85 Mo. 107; *Bruce v. Sims*, 34 Mo. 246. (5) The law requires that the party taking property under such conveyance in payment of his debt must not only know of the fraudulent intent, but must participate therein and become a party to the fraud, and actually participate in the fraud. *State to use v. Mason*, 112 Mo. 374; *Sexton v. Anderson*, 95 Mo. 379; *Holmes v. Braidwood*, 82 Mo. 610. (6) While the jury may infer the fraudulent intent of the grantor from circumstances, when there is no direct proof, yet when there is direct and pointed proof that there was no such intent upon the

part of the grantor, brought out and introduced by the defendant, as in this case, the jury can not infer fraud, from mere circumstances, and the court should have sustained the first ground of motion for new trial. (7) The judgment should have been against the defendant for all costs. 2 Shinn on Att. and Garn., sec. 677; *Kirby v. Corning*, 54 Wis. 599.

*John H. Lucas* and *George L. Mann* for respondent.

(1) The burden of the proof was upon interpleader to "make out his case." The burden is not shifted when he upon whom it rests has made out his *prima facie* case, but remains throughout the trial where it is fixed by the pleadings, unless changed by some admission of record. *Bunker v Hibler*, 49 Mo. App. 536; *Norton v. Paxton*, 110 Mo. 456; *Long v. Long*, 44 Mo. App. 141. (2) The jury could not have understood from instruction number 5, taken as a whole, that it devolved upon interpleader to prove the *bona fides* of his chattel mortgage and bill of sale. (3) The instructions given in this case are especially proper when they are considered in connection with the pleadings and the evidence offered by. interpleader at the trial. (4) Under the general issue the burden of proof is upon the plaintiff throughout the case. *Berringer v. Iron Co.*, 41 Mich. 305; *City of Lafayette v. Wortmer*, 107 Ind. 404; *Ingalls v. Eaton*, 25 Mich. 32; *Lafayette v. Ehman*, 30 Ind. 83; *Jarboe v. Schreb*, 34 Ind. 350. (5) The use of the word "satisfied" in instruction number 5 could not have prejudiced the interpleader. The jury could only have understood from this instruction that they must be satisfied by a preponderance of the evidence that the interpleader was the owner of the property when the attachment was levied, before they could find for him. (6) The question of fraud in the chattel

mortgage and bill of sale was properly submitted to the jury under the pleadings and evidence. *Young v. Glasscock*, 79 Mo. 574; *Greenway v. James*, 34 Mo. 326; *Schulenburg v. Harriman*, 21 Wall. 45; *Mather v. Hutchinson*, 25 Wis. 27; *Caldwell v. Bruggerman*, 4 Mich. 270; *Wheeler v. Billings*, 38 N. Y. 264; *Bosse v. Thomas*, 3 Mo. App. 472. (7) The instructions given by the court defining a fraudulent conveyance are in line with the established law of this State. *Alberger v. White*, 117 Mo. 347.

BARCLAY, P. J.—The St. Clair County Bank began an action against Mr. Chas. F. Outhwaite on notes aggregating about $3,200, April 10, 1893. At the same time the bank sued out an attachment. The writ was levied on two mules and also on a stock of drugs and some other personalty, as the property of Outhwaite. The property was found in possession of Mr. Robt. Edwards, who claimed to own it. He gave bond to have it forthcoming. He afterward filed an interplea in the attachment case, asserting his claim to all the property seized by the sheriff under the writ. Before the interplea came to final trial the bank failed. Mr. Stewart, as assignee of the bank, was substituted as plaintiff in the attachment suit. He contested Mr. Edwards' claim to the property. The issue of title was tried before Judge LAY with the aid of a jury. The result was a verdict for the interpleader for the mules only, but against him as to the other property. There was judgment accordingly. The interpleader appealed after the customary steps to that end. The real controversy as developed is between the bank's assignee and the interpleader Edwards. The original defendant has left the field of litigation entirely.

The testimony submitted by the interpleader at the trial tended to prove the following facts: In July,

1891, Mr. Outhwaite bought a stock of drugs and fix-
tures, mostly on credit, but upon which he paid $500
in cash, and then $100 per month for four or five
months. The notes in suit represent the indebtedness
to the bank for the stock at the time this suit was
brought. After a few months the drug business of
Outhwaite became a losing one. At the same time he
was carrying on a farm in St. Clair county, but that
enterprise was also not prosperous. While thus en-
gaged he and Edwards were intimate friends. He bor-
rowed of Edwards $2,000, at different times, and gave
four notes therefor. While his drug business was fall-
ing behind, Outhwaite became indebted to Edwards
(who was his clerk in 1893) to the extent of $600, and
gave his note to Edwards for that additional sum,
making in all five notes aggregating $2,600. The
officers of the St. Clair County Bank began to urge
Outhwaite to pay his debt by surrendering the drug
store to it or its agent, but he evidently preferred to
pay his friend Edwards. With that object in view he
first gave Edwards a chattel mortgage on the stock and
fixtures of the drug store to secure the indebtedness.
Afterward he concluded that there was no more of the
said property, at a reasonable price, than was necessary
to pay the claim to Edwards. So he gave to the latter
a clear bill of sale therefor. The written instruments
executed by Outhwaite to Edwards were introduced in
evidence by the interpleader. Edwards testified that
he had ample means for the said advances; that he had
returned from the west with $2,200 in cash, and with
other property; that his wife had $2,000 which he con-
trolled; and that his stepchildren had $2,000 in his care
as their guardian. Mr. Outhwaite testified how he had
expended large sums of money, and showed his losses
in his business ventures. In answer to a direct ques-
tion he declared that the transfer of the property to

Edwards was not intended to hinder, delay, or defraud his creditors.

It is noteworthy that at the trial the interpleader took the affirmative, without any recorded ruling on that point. He was the first witness sworn. After some formal proof to show that the property levied on was the same as that claimed in the interplea, the chattel mortgages on which Mr. Edwards relied and the bill of sale were offered in evidence. One was in favor of Mr. Harper; it covered the mules. The other mortgage and the bill of sale were in favor of Edwards. They conveyed the drug store, etc. Mr. Edwards as a witness testified to the transfer by Harper to him of the first named chattel mortgage. He then proceeded to describe the transaction between Outhwaite and himself wherein he took the mortgage (and finally the bill of sale) of the drug stock. He stated that the notes (representing his claim for about $2,600) remained unpaid. On cross-examination the prior dealings between Outhwaite and Edwards were fully gone into. It appeared that part of the claim of Edwards was for money loaned in 1891, when Outhwaite, the proprietor in 1893, was clerk for Edwards in the same drug store.

The assignee of the bank introduced in evidence the statements of Edwards at a former trial, as reported by a stenographer. They tended to contradict his last version of the transaction in many vital particulars, and to weaken the force of his testimony generally. It is not necessary to go further into the details of the evidence to indicate the points of contradiction.

1. It was suggested on behalf of the interpleader that the discrepancies referred to were ascribable to the undue influence of certain stimulants with which he sought to fortify himself for the first trial. The sufficiency of that explanation of the contradictions was, of

course, for the triers of the fact. No question of law in regard to it is raised for decision in this case.

2. Error is charged in the giving of the fifth instruction for the assignee, as follows:

"5. The court instructs the jury that it devolves on the interpleader to make out his case by a preponderance of the evidence, and before he can recover you must be satisfied that, at the time of the levy of the writ of attachment herein, he was the owner of the property in controversy, and in this connection you are instructed that if you believe from the evidence that the chattel mortgage and bill of sale introduced in evidence were made by Outhwaite for the purpose of hindering, defrauding, or delaying his creditors, and Edwards knew of and participated in such purpose on the part of Outhwaite, then he can not recover herein, even though you may believe that Outhwaite was indebted to Edwards at the time."

Several points of objection to this instruction are presented. But before discussing them, another instruction given by the court of its own motion should be mentioned, viz.:

"If the jury believe from the evidence that C. F. Outhwaite had borrowed of Robert Edwards the sum of $2,000 and was indebted to him in the sum of $600 for services as clerk, and that the notes and mortgage from Outhwaite to Edwards were given to secure said notes; and that the bill of sale was given and taken in payment of said notes and that the goods were not worth more than reasonably sufficient to pay said debt, and that Edwards was in possession of the goods mentioned in the bill of sale and that they were, while in his possession, levied on by the sheriff in the case of the St. Clair County Bank v. said Outhwaite, then the jury will find for the interpleader, Edwards, for all the goods so levied on by the sheriff which are claimed in

this interplea and are included in said bill of sale, unless you find from the evidence that the sale of the goods was fraudulent, as submitted to you in another instruction.''

It is said by appellant's counsel that the declaration that ''it devolves on the interpleader to make out his case by a preponderance of the evidence'' is not correct.    The interplea was a mere claim of ownership of the property in dispute.    The mortgage and bill of sale were not admitted by the pleadings.    Their existence had to be proved by the interpleader as the foundation of his claim.    The way the interpleader began the trial and his offers of testimony show that he then took the position that the burden of proving his ownership was on him.    Parties are bound on appeal by the positions they take at the trial, if no demand of public policy interferes with the application of that rule.

But even if the general announcement opening the fifth instruction is erroneous, it would not be a fatal error when it is noted that certain specific facts are required to be found in order to defeat the mortgage and bill of sale, and that they must be established on the part of the assignee.    *Alberger v. White* (1893) 117 Mo. 347 (23 S. W. Rep. 92).    The finding of those specific facts is correctly called for.    The interpleader took the benefit of opening the case, with the further advantage of closing it to the jury.    He did not ask any declarations of law as to the burden of proof.    His conduct at the trial (as well as several instructions asked by him) indicated that he willingly assumed that burden.    Considering these facts, we are not prepared to say that the second instruction was erroneous, when read in conjunction with the following instructions also given by the court to the jury, viz.:

''3.    The court instructs the jury that if Edwards was a *bona fide* creditor of Outhwaite, then Outhwaite

had the legal right to prefer the claim of said Edwards and to pay the same in full, although he may have been otherwise indebted to other creditors, and such preferment of Edwards may have tended to hinder and delay such other creditors. But although you may believe from the evidence that Outhwaite owed Edwards as claimed, yet if you further believe from the evidence that Outhwaite conveyed the goods to Edwards with the intent to hinder and delay or defraud Outhwaite's creditors and that Edwards knew of and joined or participated in such intent, then the interpleader can not recover.

"1. If Outhwaite conveyed the property in controversy to Edwards, intending to hinder, delay, or defraud his creditors, and Edwards knew of, and participated in, such intent on the part of Outhwaite, then such conveyance was fraudulent and void and conferred no title to the property to Edwards, and he can not recover."

3. The objection to the word "satisfied" we do not consider weighty. As it is used in the fifth instruction, the word does not convey the impression that the jury must be convinced beyond a reasonable doubt. The latter part of the instruction shows that belief of the jury is all that is required. The word "satisfied" is not wholly satisfactory in such an instruction, and is not to be commended. If it appeared to be misleading, it might be fatal to an otherwise fair result. But its meaning is no wider, in its present place, in demanding the mental concurrence of the jury, than is conveyed by the accompanying words "preponderance of the evidence." That phrase has a popular and colloquial significance which the average juryman may fairly be supposed to grasp. Its use in an instruction is not of itself error. *State v. Smith* (1873) 53 Mo. 267; *Berry v. Wilson* (1876) 64 Mo. 164. Nor does

the word "satisfied" constitute a fatal blemish in the instruction as it stands.

4.   It is next claimed that the alleged fraud on which the assignee impeached the transfers to Outhwaite was not provable, because not pleaded.   The interplea for the property was a simple claim of ownership.   It was met by a general denial.   The testimony of good faith on the part of the interpleader (and that tending to question it) came in without any objection of inadmissibility under the pleadings.   It is too late to raise such an objection at this stage of the controversy.   If the testimony was not admissible, under the issues, that point should have been started in the circuit court, where an amendment might have taken away the force of the objection.   It will not do to allow the testimony to come in as if relevant at the trial, and then on appeal challenge it as outside of the paper case.   Such an objection must be saved by some sort of an exception, and unless that is done it is unavailing in the Supreme Court.   R. S. 1889, sec. 2302; *Hill v. Meyer Bros. Drug Co.* (1897) 140 Mo. 433 (41 S. W. Rep. 909).

5.   Fault is found with the fifth instruction in calling for a finding that Edwards participated in the purpose or intent of Outhwaite to hinder, delay, or defraud his creditors.   There was testimony from which the jury might have inferred that there was such a participation, and the rule of law stated in the instruction on that point has been approved by prior decisions.   *Alberger v. White* (1893) 117 Mo. 347 (23 S. W. Rep. 92); *Alkire Grocery Co. v. Ballenger* (1897) 137 Mo. 369 (38 S. W. Rep. 911).

6.   The fourth refused request for an instruction for the interpleader is as follows: "The court instructs the jury that if you find and believe from the evidence that C. F. Outhwaite executed and delivered to the

interpleader the bill of sale read in evidence, and that the said interpleader went into possession of the stock of goods, wares, and merchandise, under and by authority of such bill of sale, and was so in possession at the time the sheriff of St. Clair county levied upon said goods and merchandise, and that they were sold to him for and in consideration of a valid and subsisting previous indebtedness, then your finding should be for the interpleader, Robert Edwards.'' It is claimed that the court erred in refusing that request. It is enough to say that it leaves out of view the good faith of the transaction, and hence was rightly refused.

7. Mr. Outhwaite testified (in reply to a direct question) that he did not give the chattel mortgage for the purpose of hindering or delaying his creditors. Appellant argues that, as the assignee's counsel drew out that testimony, it must be taken as proof of the fact elicited; hence that the jury were not warranted in finding a fraudulent intent from facts and circumstances merely. The answer to that contention is that the assignee was not concluded by the answer of the witness as to his intent. Intent is a fact that ordinarily may be testified to by the person whose intent is in question. But that was not the only testimony in the case on that point, and all the evidence given on that subject was entitled to be weighed and considered by the jury.

8. The finding in favor of the interpleader for the two mules was based on a different chattel mortgage from that covering the drug stock. It appeared that the mortgage on the mules was bought by the interpleader from a third party after the levy of the attachment writ in this case. Because of that fact, we presume, the trial court adjudged all the costs against the interpleader, as it had authority to do. R. S. 1889,

sec. 2922. We see no abuse of discretion or even error in that part of the judgment.

9. The foregoing comments dispose of all the assignments of error that justify any remark. The judgment is affirmed. MACFARLANE, ROBINSON and BRACE, JJ., concur.